In re Kenneth Lawrence **GENTILE &**
**Susan Lynn Gentile, d/b/a Gem**
**Electric Service Company, Debtors.**

**CRESCENT ELECTRIC SUPPLY COMPANY, a corporation, Plaintiff,**

v.

**Kenneth Lawrence GENTILE, & Susan Lynn Gentile, et al., Defendants.**

**Bankruptcy No. 89–20591–C.**
**Adv. No. 90–2001–C.**

United States Bankruptcy Court,
W.D. Missouri, C.D.

May 11, 1990.

Bruce H. Beckett, Columbia, Mo., for plaintiff.

John Reed, Jefferson City, Mo., for debtors.

John Kuebler, Jefferson City, Mo., for Exchange Nat. Bank.

Jack E. Brown, Columbia, Mo., trustee.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Debtors, Kenneth Lawrence Gentile and Susan Lynn Gentile, were doing business as Gem Electric Service Company. As such they bid and completed industrial lighting projects as contractors or subcontractors. One of their more important sources for the lighting fixtures and material which they used on their jobs was Crescent Electric Supply Company. Twehous Construction Company awarded a subcontract to debtor for a street lighting project in Jefferson City, Missouri. To carry out that subcontract, debtors ordered 26 aluminum light poles, 30 feet in length, and 26 fixtures to affix to said poles, from the plaintiff, Crescent Electric Supply Com-

pany, hereinafter Crescent. Crescent is a Missouri corporation engaged in the business of supplying all kinds of materials and fixtures for use in the lighting and electrical business. Crescent ordered the poles from Hapco Company. On or about March 22, 1989, Hapco delivered the poles to debtors' leased premises rather than to Crescent, where they remained until after the bankruptcy was filed. Crescent billed debtors for $23,322.00 on March 22, 1989.

Crescent was not able to deliver appropriate lighting fixtures that were to be affixed to the poles. Therefore, debtors could neither install them, nor get paid by Twehous. Debtors did install two of the poles in Jefferson City but the fixtures were not approved and debtors were not paid. Finally, in August of 1989 debtors ordered fixtures from Glasco Electric Company (another supplier) but these were not delivered to debtors before the bankruptcy. About August of 1989, several conversations took place about the $23,322.00 bill for the poles.

On September 10, 1989, Crescent issued a credit memo to debtors for $23,322.00. This would break down to $21,528.00 for the 24 poles on debtors' premises and $1,794.00 for the two poles installed in Jefferson City. None of the poles were ever removed from debtors' premises or from the lighting project in Jefferson City. Debtors closed their business on or about September 27th or 28th, 1989, and the Chapter 7 petition for relief was filed on October 10, 1989.

The Trustee, Jack E. Brown, always alert to the enhancement of estates, sold the twenty-four (24) poles on the premises of debtors and the two (2) installed poles to Twehous Construction for $23,426.00. Crescent filed this adversary action against the aforesaid Trustee claiming conversion of its property, as well as having a claim superior to that of debtors, Exchange National Bank, and the Small Business Administration. Crescent claimed the poles were its property and wanted the money. Answers were filed by the debtors, the Trustee and Exchange National Bank. The Court believes that the real issues are be-

tween Crescent and the Trustee and the heart of those issues is what legal effect the credit memo of September 10, 1989 had and whether any transfer of title caused by said credit memo was a preference by debtors to Crescent.

Crescent apparently believed that 11 U.S.C. § 547 would be the basis of the Trustee's position (as well as that of the Exchange Bank) and from the start of the case sought to negate the preference problems by asserting and proving an 11 U.S.C. § 547(c)(2) exception to the general rule of preferences. It was the contention of Crescent that the credit memo was issued in the normal course of business as payment of debt incurred in the normal course of business and was made according to ordinary business terms. Crescent sought to pattern its evidence so as to come within the ambit of *Windsor Communications Group v. Freedom Greeting Card Co., Inc.*, 63 B.R. 770 (E.D.Pa.1986). In that case the District Court allowed a creditor to retain returned merchandise under the 11 U.S.C. § 547(c)(2) exception. However, that case is clearly distinguishable from this case on the underlying facts. Inter alia, some of the differences are:

1. The sale to Windsor was on consignment.
2. The Windsor sales agreement contained "an option to return."
3. The Windsor return was within 45 days of some deliveries.

Even were the two cases not so factually dissimilar, this Court would have great difficulty in sustaining Crescent's position. While this Court is not ruling, and does not state herein, that only cash payments to cash sellers can fall within the protection of 11 U.S.C. § 547(c)(2), as suggested in an article by Levin, "An Introduction To The Trustee's Avoiding Powers", 53 American Bankruptcy Law Journal 173 (1979), those arguments must be considered. Also see the article by Tait & Williams entitled "Bankruptcy Preference Laws" appearing in 99 Banking Law Journal 55 (1982), together with cases cited therein.

It is easy to misinterpret what 11 U.S.C. § 547(c)(2)(B) is truly directed toward un-

**194**

less the interpreter is familiar with the wording before the 1984 amendments. Those amendments substantially changed the wording of that subsection. Before that date § 547(c)(2)(B) read—

    (B) made not later than 45 days after said debt was incurred;

The present wording was intended by Congress to be an expansion of the strict measure of time and relates to items sold on dated terms and the like where no one in the particular industry pays until long after delivery. Creditor's evidence directed at demonstrating how usual and normal the return policy was, failed to include any reference to time. The Court believes that it is not customary for a buyer to return goods some six months after sale particularly without a restocking charge and the Court does not believe that same is "in the ordinary course of business."

Finally, the Court is not convinced from the evidence as a whole that there was any intent on the part of the debtors to return the poles to Crescent in payment of the March invoice. There is a strong overtone that the credit memo was a temporary matter not a "done deal" and as such would be reversed as soon as debtors could install the poles on the Jefferson City project. Debtors used the term "leverage" in Kenneth Gentile's deposition, as indicating further action. Debtors also spoke of an adjustment to the bill if replacement fixtures cost them more than the agreed price from Crescent. Debtors contemplated using those poles as soon as they could hang acceptable fixtures on them. Everybody planned for these poles to go on the Jefferson City job.

For all of the legal and factual reasons set forth above, the complaint of Crescent Electric Supply Company is DENIED against all defendants herein.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

    SO ORDERED.